**UNITED STATES of America, Plaintiff–Appellee, Plaintiff–Appellant (97–6308/6309),**

v.

**David Tex HILL, Defendant–Appellant (97–6051/6286), Defendant–Appellee.**

**Nos. 97–6051, 97–6286, 97–6308, 97–6309.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 3, 1998.

Decided Feb. 17, 1999.

David C. Jennings (argued and briefed), Nancy Stallard Harr, Office of the U.S. Attorney, Knoxville, TN, for Plaintiff–Appellant.

Peter J. Strianse (argued and briefed), Tune, Entrekin & White, Nashville, TN, David "Tex" Hill, Maryville, TN, for Defendant–Appellee.

Before: MERRITT and COLE, Circuit Judges; EDMUNDS *, District Judge.

## OPINION

EDMUNDS, District Judge.

David Tex Hill was convicted by a jury on charges of conspiracy and conducting an illegal gambling operation in violation of 18 U.S.C. § 1955 and on charges of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A) and (B). The jury also returned a special criminal forfeiture verdict finding that certain of Hill's properties were involved in the money laundering convictions. On appeal, Hill asserts multiple challenges to his convictions, sentence, and criminal forfeiture. The government has also filed an appeal challenging the district court's decisions (1) allowing Hill to substitute $500,000 cash in lieu of forfeiting the actual property the jury determined was involved in his money laundering convictions; and (2) staying the execution of that portion of the criminal forfeiture judgment as it relates to residential real property owned by *bona fide* purchasers for value pending this appeal.

As to Hill's money laundering convictions, we conclude that the district court did not err when it denied Hill's motion to dismiss the indictments. The Tennessee gambling statute is not unconstitutionally vague as applied in this case, and the indictments sufficiently alleged the knowledge element as required under § 1956(a)(1) of the money laundering statute. The statute does not require allegations or proof that the defendant knew the precise nature of the unlawful activity that produced the money he is accused of laundering; i.e., that he knew it

---

* The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

came from felonious, as opposed to misdemeanor, activity. We similarly conclude that the district court did not err when it declined Hill's request to instruct the jury that a money laundering conviction under § 1956(a)(1) requires the government to prove that the defendant not only knew that the proceeds being laundered were derived from criminal activity but must also prove that the defendant knew the precise nature of the criminal activity creating the laundered proceeds. The jury was properly instructed that the government must prove that the defendant knew the laundered funds came from criminal activity and must also prove that the criminal activity at issue was a felony under state or federal law.

Likewise, we conclude that the district court did not abuse its discretion or preclude Hill from presenting a defense as to the knowledge requirement of § 1956(a)(1) when it held inadmissible Hill's proffered evidence construing Tennessee's gambling statute and opining that mere possession or placement of gambling machines without more did not constitute a violation of Tennessee's gambling statute. Finally, as to these convictions, we conclude that the district court was not required to dismiss the § 1956 money laundering charges despite its dismissal of § 1957 charges and a structuring charge brought pursuant to 31 U.S.C. § 5324(a) because the latter are not lesser included offenses of the § 1956 money laundering offenses.

As to Hill's sentence, we conclude that this Court lacks jurisdiction to consider Hill's appeal of the district court's discretionary refusal to depart downward, and further conclude that the district court did not err when it found Hill was not entitled to a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). As to Hill's forfeiture challenges, we conclude there was sufficient evidence connecting Hill's purchase of 616 shares of Greene County Bancshares stock to money gained from his illegal gambling business and reject as meritless Hill's claim that a draw on a line of credit, which is basically a loan, cannot constitute a money laundering transaction under 18 U.S.C. § 1956. We further conclude that Hill's criminal forfeiture is not disproportionate to his crimes, and thus does not violate the Excessive Fines Clause of the Eighth Amendment. Therefore, we **AFFIRM** Hill's convictions, sentence and criminal forfeiture.

As to the government's appeal, we **REVERSE** the district court's post-verdict forfeiture decisions because (1) the district court lacked authority, under 18 U.S.C. § 982, to allow Hill to substitute $500,000 cash in lieu of the property subject to forfeiture; and (2) the district court abused its discretion when it stayed, pending this appeal, the execution of that portion of the criminal forfeiture judgment relating to residential real property owned by *bona fide* purchasers for value.

## I.

Defendant David "Tex" Hill owed businesses known as Play and Play Amusement and Playtime Amusements between 1987 and 1992. Through these businesses, Hill supplied Tennessee area businesses, such as restaurants, bars, and convenience stores, with video poker and video slot machines along with juke boxes, pinball machines, and pool tables. At issue here are the video poker and slot machines which accepted coins and dollar bills; some up to $20. After playing and winning at one of these machines, the business proprietor would pay the customer his cash winnings. Hill did not allow the video poker and slot machines to be placed in businesses that did not make payoffs. He and the business proprietors split the cash proceeds from these machines on a $^{50}/_{50}$ basis.

Most of the proprietors using Hill's machines settled their accounts with Hill in cash and did not keep records of the proceeds. Hill's employees regularly emptied the cash from the machines and then settled up with the business owners; paying them in cash. Hill's employees were also paid in cash. Although Hill did not want records kept on the income generated by his gambling machines, two proprietors, Pete Campbell and Alice Sauls, did use checks to pay him. Each emptied Hill's machines, figured out Hill's 50 percent share, and wrote Hill a check for that amount. Alice Sauls also kept a ledger for 13 months between 1991 and 1992 of the breakdown of cash generated by the video poker and slot machines and the jukebox and

pinballs machines located at her business. During the time Ms. Sauls kept the ledger, 84% of the cash came from the gambling machines and 16% came from the jukebox and pinball machines.

These checks and the Sauls ledger provided much of the government's proof that Hill's illegal gambling business generated cash income to Hill of approximately $1 million a year. The cash and checks paid to Hill for his 50% of the take from the machines were also traced to a checking account and a bank line of credit maintained on his behalf. Hill's proceeds from the machines were further traced to financial transactions intended to promote his gambling business, to financial transactions designed to conceal the nature of the proceeds or designed to avoid reporting requirements under federal law, and to the forfeited property. Also, as proof that Hill knowingly and willfully conducted an illegal gambling business, the government presented evidence that when some of Hill's machines were seized from a Monroe County, Tennessee restaurant by the Federal Bureau of Investigation (FBI) pursuant to a seizure warrant executed in October 1989, Hill replaced the machines within a day of their seizure. That October 1989 seizure warrant was found in Hill's Play and Play business headquarters in Maryville, Tennessee, during the execution of a search warrant by the FBI on May 20, 1992.

In August of 1992, Hill and 18 other defendants were charged in a 71–count indictment with multiple counts of conspiring to operate and operating an illegal gambling business in violation of 18 U.S.C. § 1955, and multiple counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (money laundering with the intent to promote the illegal gambling business), § 1956(a)(1)(B)(i) (money laundering with the intent to conceal the nature of the proceeds of the illegal gambling business), and § 1957 (money laundering offenses involving monetary transactions of a value greater than $10,000 derived from the illegal gambling business). Hill was also charged with criminal forfeiture under 18 U.S.C. § 982 and 21 U.S.C. § 853 (demanding forfeiture of real and personal property directly or indirectly involved in the money laundering offenses).

In March of 1993, a federal grand jury returned a second indictment against Hill, his brother and two other defendants. Hill was charged with one count of money laundering involving a monetary transaction of value greater than $10,000 in violation of 18 U.S.C. § 1957. Hill was also charged with three counts of money laundering designed to avoid reporting requirements in violation of 18 U.S.C. § 1956(a)(1)(B)(ii); one count of "structuring" money transactions to avoid reporting requirements in violation of 31 U.S.C. §§ 5322 and 5324; and one count of criminal forfeiture under 18 U.S.C. § 982 and 21 U.S.C. § 853.

The two indictments were consolidated for trial. Extensive pretrial litigation ensued over the next three years, which included three interlocutory appeals to this Court. Ultimately, all charges against several codefendants were disposed of, leaving only the charges against Hill for trial.[1]

The trial was bifurcated to allow the forfeiture counts to be separately considered. Defendant Hill went to trial on October 1, 1996. Several counts of the first indictment were dismissed prior to trial upon motion by the government. At the close of the government's case, the district court granted Hill's motion for acquittal as to all counts charging a violation of 18 U.S.C. § 1957. The court also dismissed the only Title 31 structuring charge which was count 6 of the second indictment. The indictments were then renumbered, leaving : a 46–count first indictment and a 4–count second indictment for the jury's consideration. The last count in each indictment was a criminal forfeiture count, and these were to be addressed in a separate trial.

On October 21, 1996, the jury returned guilty verdicts as to the counts of conspiracy and conducting an illegal gambling business

---

**1.** Six codefendants pled guilty to their involvement in the illegal gambling business. The charges against Hill's brother, Luther Hill, were dismissed prior to trial upon motion by the government. The remaining defendants, who were business proprietors who made use of Hill's video poker and video slot machines, entered into Pretrial Diversion Agreements.

in violation of § 1955, and also found Hill guilty of 16 counts of money laundering in violation of §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1956(a)(1)(B)(ii). Hill was found not guilty on the remaining counts. On June 20, 1997, the district court fined Hill $25,000 and sentenced him to 57 months' imprisonment on each count of conviction, all to run concurrently. For sentencing purposes, the district court made a factual finding that 75 percent of all the funds generated by Hill's amusement business were from the operation of illegal gambling devices.

At the separate October 22, 1996 trial on the criminal forfeiture counts, the jury returned a special verdict finding that each property that was the object of a money laundering count on which Hill was convicted was "involved in" the charged offense and subject to forfeiture. The government subsequently moved for a preliminary order of forfeiture with regard to the properties and funds subject to forfeiture.[2] On July 18, 1997, the district court issued a preliminary order of forfeiture. Rather than ordering immediate forfeiture as the government sought pursuant to 18 U.S.C. § 982(a)(1) and 21 U.S.C. § 853(a), the district court decided *sua sponte* that Hill could pay $500,000 in lieu of actual forfeiture of the subject properties. Judgment was entered on July 31, 1997. Timely appeals were filed by both parties. The court also issued an order, on August 21, 1997, permitting Hill to post letters of credit worth $400,000 and a $100,000 cash bond toward satisfaction of the $500,000 forfeiture, and stayed execution of the forfeitures pending appeal. The government filed a timely appeal of the stay order.

## II.

### A. Stay

■ As a threshold matter, this Court denies Hill's motion seeking a stay of this appeal pending the outcome of an appeal in an unrelated case in the Tennessee state courts. A stay is not warranted under the *Pullman* doctrine of abstention or principles of judicial economy and efficiency. *See Railroad Comm'n of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

In an unpublished March 18, 1998 two-page order, a Tennessee Circuit Court for Montgomery County dismissed a one count indictment against the defendant finding the definition of "gambling" and "gambling device" in Tenn.Code Annot. §§ 39–17–501 and 505 unconstitutionally vague and overly broad under both the Tennessee and United States' Constitutions. *See State of Tennessee v. Rhonda Burkhart,* No. 38568. The state has appealed the ruling.

Hill's arguments for a stay are without merit. His motion and the orders he relies upon do not provide this Court with critical underlying facts, such as the defendant's alleged criminal conduct and whether Tennessee's gambling statute was found unconstitutional on its face or as applied to the specific facts of the *Burkhart* case. It is unlikely that the trial court found the statute unconstitutional on its face. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (where the Court observed that a facial vagueness challenge requires a showing that "the enactment is impermissibly vague in all its applications"); *United States v. Loehr,* 966 F.2d 201, 204 (6th Cir.), *cert. denied,* 506 U.S. 1020, 113 S.Ct. 655, 121 L.Ed.2d 582 (1992) (where this court observed that, absent a first amendment challenge, the court examines whether a statute is unconstitutionally vague as applied to the specific facts of the case before it). It is more likely that the Tennessee trial court found the Tennessee gambling statute unconstitutional as applied to the specific facts of the case before it. As discussed below, Tennessee's gambling statute is not unconstitutionally vague as applied to the facts in this case. Even if the current stat-

---

**2.** The government sought the actual forfeiture of the forfeited property, including sums of cash, a convenience store, a restaurant, 616 shares of Greene County Bancshares stock, and a Florida beachfront home. The government did not seek the actual forfeiture of subdivision lots which had been sold to *bona fide* purchasers for value. As to the forfeited lots, the government intended to satisfy the criminal forfeiture judgment with substitute assets of Hill's pursuant to 21 U.S.C. § 853(p).

ute were to be declared unconstitutional in some applications, electronic video poker and slot machines such as those at issue in Hill's prosecution have long been recognized as gambling devices and their use declared illegal under Tennessee's prior gambling statute.[3] *See T & W Enterprises, Inc. v. Casey,* 715 S.W.2d 356 (Tenn.App.1986); *State ex rel. Shriver v. Fraternal Order of Eagles,* 671 S.W.2d 859 (Tenn.Cr.App.1984).

The Court turns now to Hill's substantive arguments. First, we address Hill's challenges to his convictions. Next, we address his challenges to his sentence. Finally, we address both Hill's and the government's challenges regarding forfeiture.

## B. Section 1955 Gambling Convictions

■ Hill appeals his convictions under 18 U.S.C. § 1955 for conspiring and conducting an illegal gambling business. Section 1955 looks, in this case, to Tennessee law for the definition of an "illegal gambling business." [4] Hill contends that the definitions of "gambling device" and "gambling" under Tennessee's gambling statutes, Tenn.Code Annot. §§ 39–17–501, *et seq.,* are unconstitutionally vague thus failing to give him fair notice that his activities were prohibited. The district court found Hill's arguments unavailing, and denied his motion to dismiss those counts of the indictment charging violations of § 1955. We agree with the district court.

■ We review *de novo* the legal question whether Tennessee's gambling statutes are unconstitutionally vague. *See United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.), *cert. denied,* 469 U.S. 824, 105 S.Ct.

101, 83 L.Ed.2d 46 (1984). A statute is not unconstitutionally vague if "ordinary people, exercising ordinary common sense, can understand it and avoid conduct which is prohibited". *United States v. Salisbury,* 983 F.2d 1369, 1378 (6th Cir.1993). The underlying principle of the void-for-vagueness doctrine is that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Warner v. Zent,* 997 F.2d 116, 125 (6th Cir. 1993), *cert. denied,* 510 U.S. 1073, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994) (quoting *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954)). "The law must be specific enough to give reasonable and fair notice in order to warn people to avoid conduct with criminal consequences" and "must also establish minimal guidelines to govern enforcement." *Salisbury,* 983 F.2d at 1378.

■ In cases such as this, where first amendment interests are not threatened, the court examines whether the statute is unconstitutionally vague as applied to the specific facts of the case; not whether it is unconstitutional on its face. *See Loehr,* 966 F.2d at 204 (citing *Maynard v. Cartwright,* 486 U.S. 356, 361, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988)). *See also Village of Hoffman Estates,* 455 U.S. at 494–95, 102 S.Ct. 1186 (where the Court observed that a facial vagueness challenge requires a showing that "the enactment is impermissibly vague in all its applications"). Thus, the question here is whether Hill had reasonable and fair notice that his conduct was prohibited by Tennessee's gambling laws.

---

**3.** Should the Tennessee Supreme Court subsequently declare that Tennessee's gambling statute is unconstitutional, either on its face or as applied to facts similar to those presented here, Hill is not without a remedy. This Court's decision is without prejudice and does not preclude Hill from seeking relief under 28 U.S.C. § 2255.

**4.** 18 U.S.C. § 1955 provides that:
 (a) Whoever conducts, finances, manages, supervises, directs or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both.
 (b) As used in this section -
 (1) "illegal gambling business" means a gambling business which -

 (i) is a violation of the law of a State or political subdivision in which it is conducted;
 (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
 (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
 (2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

There are both misdemeanor and felony gambling violations in Tennessee. A person "who knowingly engages in gambling" commits a misdemeanor. Tenn.Code Annot. § 39–17–502. Gambling promotion is also a misdemeanor. Tenn.Code Annot. § 39–17–503 provides that this offense is committed by a person "who knowingly induces or aids another to engage in gambling, and: (1) Intends to derive or derives an economic benefit other than personal winnings from the gambling; or (2) Participates in the gambling and has, other than by virtue of skill or luck, a lesser risk of losing or greater chance of winning than one (1) or more of the participants."

It is a felony under Tennessee law to engage in "aggravated gambling promotion." Tenn.Code Annot. § 39–17–504 provides that this offense is committed by someone "who knowingly invests in, finances, owns, controls, supervises, manages or participates in a gambling enterprise." This section further provides that " 'gambling enterprise' means two (2) or more persons regularly engaged in gambling promotion as defined in § 39–17–503." "Gambling" is defined as "risking anything of value for a profit whose return is to any degree contingent on chance, but does not include a lawful business transaction"; and "gambling device" is defined as "anything designed for use in gambling, intended for use in gambling, or used for gambling". Tenn.Code Annot. § 39–17–501.

■ Hill's arguments, that he did not have fair notice that the conduct which forms the basis of his § 1955 convictions was illegal under Tennessee's gambling laws, are without merit. Hill asserts that Tennessee's gambling laws are unconstitutionally vague because the definitions for "gambling" and "gambling device" fail to give an ordinary person adequate notice whether conduct, such as owning playing cards, lottery tickets, or newspapers that publish winning lottery numbers, is prohibited. The issue before the Court, however, is not whether a laundry list of possibilities renders the Tennessee statutes unconstitutional on their face or as applied to others; the issue is whether the statutes are unconstitutional as applied to Hill. See Loehr, 966 F.2d at 204. Hill lacks

standing to attack Tennessee's gambling statute as it might be applied to others. See Village of Hoffman, 455 U.S. at 495, 102 S.Ct. 1186 (where the Court observed that a person "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others" and instructed that "[a] court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law").

Accordingly, to succeed on his "void for vagueness" argument, Hill must persuade the Court that he did not have fair notice that his conduct, which included placing video poker and slot machines in businesses and collecting one half of the profits generated from their use, was prohibited under Tennessee's gambling statute. Hill does not advance any such argument, and even if advanced, it would prove unsuccessful. Video poker and slot machines have long been recognized as gambling devices under Tennessee law and their use in connection with gambling is prohibited. This was true under Tennessee's former gambling statutes. See T & W Enterprises, Inc. v. Casey; State ex rel. Shriver v. Fraternal Order of Eagles; United States v. Marchman, 399 F.Supp. 585 (E.D.Tenn.1975). It is also true under Tennessee's gambling statute which was enacted in 1989. See Sentencing Commission Comments, Tenn.Code Annot. § 39–17–501 (West 1998) (where it is observed that the statutory definitions "are intentionally broader than those found in the prior law"). We affirm the district court's decision as to Hill's void for vagueness arguments.

We turn now to Hill's money laundering convictions.

## C. Money Laundering Offenses and the Scienter Requirement of Section 1956(a)(1)

■ Initially, Hill raises three challenges to his money laundering convictions, each focusing on the scienter requirement of Section 1956(a)(1). First, Hill argues that his indictments did not adequately allege the knowledge element required for money laundering offenses under 18 U.S.C. § 1956(a)(1). Even though the money laundering counts

track the language of the statute and allege that Hill knew that the property involved in the financial transactions represented the proceeds of unlawful activity, Hill maintains that the indictments must allege that he knew that the unlawful activity was a felony as opposed to a misdemeanor. Next, Hill challenges the jury instructions. He contends that the district court should have instructed the jury that the government was required to prove that he knew that the source of the laundered proceeds was criminal activity and that he also knew that the criminal activity constituted a felony, as opposed to a misdemeanor, under federal or state law. Finally, Hill challenges the district court's pretrial ruling which he claims prevented him from presenting a defense on an essential element of Section 1956(a)(1); i.e., knowledge of a felony. We hold that Section 1956(a)(1) does not require the government to prove that the defendant knew that the alleged unlawful activity was a felony under state, federal or foreign law, as opposed to a misdemeanor, so long as the defendant knew that the laundered proceeds were derived from unlawful activity.

### 1. Adequacy of the Indictments

Whether an indictment adequately charges an offense is a question of law subject to *de novo* review. *See United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir.1992). "The Notice Clause of the Sixth Amendment, as protected by Fed. R.Crim.P. 7(c) [5], guarantees a criminal defendant the right to be informed of the charges brought against him." *Id.* at 176 (footnote in original). This Court has observed that "[a]n indictment will usually be sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense." *Id.*

The money laundering counts in Hill's indictments track the language of the money laundering statute.[6] Hill argues that more is required for an offense under § 1956(a)(1). He contends that, when subsections (a)(1) and (c)(1) are read together, they require the government to include an allegation in the indictment that the defendant knew the precise nature of the unlawful activity that produced the money he is accused of laundering; i.e., that he knew it came from felonious, as opposed to misdemeanor, activity. Stated otherwise, Hill argues that, under § 1956(a)(1), it is acceptable to know that the money being laundered is "dirty" (unlawful activity is its source) as long as the defendant does not know that it is "really dirty" (its source is felonious activity). Failure to allege this "knowledge-of-a-felony" element, Hill asserts, requires dismissal of the money laundering counts. We disagree. Hill's arguments misconstrue the plain language of the statute, improperly conflate and confuse separate elements of money laundering under § 1956(a)(1), and defeat the statute's purpose.

Section 1956(a)(1) provides, in pertinent part, that:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified activity—

(A)(i) With the intent to promote the carrying on of specified unlawful activity; or

\* \* \* \* \* \*

in violation of Title 18, United States Code, Section 1955, with the intent to promote the carrying on of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, defendant David T. Hill knew that the property involved in the financial transactions, that is, funds and monetary instruments in the approximate amounts set forth below represented the proceeds of unlawful activity.
August 18, 1992 indictment. J.A. at 212.

---

**5.** Fed.R.Crim.P. 7(c) states in pertinent part that the indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offenses charged."

**6.** An example of the language used in the indictments follows:
On or about the dates set forth below, in the Eastern District of Tennessee, defendant David T. Hill did knowingly conduct and attempt to conduct financial transactions which involved the proceeds of a specified unlawful activity, that is, an illegal gambling business conducted

(B) knowing that the transaction is designed in whole or in part—

 (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

 (ii) to avoid a transaction reporting requirement under State or Federal law,

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

The statute further provides, in subsection (c)(1), that, as used in § 1956(a)(1), the term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" means that the defendant "knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law, regardless of whether or not such activity is specified in paragraph (7)." 18 U.S.C. § 1956(c)(1).

In *United States v. Maher*, 108 F.3d 1513 (2nd Cir.1997), the court construed § 1956(a)(1)'s language, rejected an argument similar to the one Hill raises here, and held that the defendant's "knowledge of the precise nature of the unlawful activity that produced the money he laundered" was not an element of § 1956(a)(1) money laundering offenses. *Id.* at 1525. We agree with the *Maher* court's analysis and conclusion and find it controlling here.

■■■ As the *Maher* court observed, "[t]he first paragraph of § 1956(a)(1) is plainly crafted to distinguish between the actual source of laundered money and the defendant's knowledge as to the source of that money." *Id.* at 1526. Reading §§ 1956(a)(1) and (c)(1) together does not make that distinction any less plain. The defendant need only know that the source of the laundered money was some form of criminal activity.

The elements for money laundering set out in Section 1956(a)(1) require government proof that the defendant (1) conducted or attempted to conduct a financial transaction; (2) which he then *knew* involved the proceeds of *some form of unlawful activity;* (3) the unlawful activity constituted a felony under state, federal, or foreign law as required in subsection (c)(1); and (4) the financial transaction did in fact involve the proceeds of *specified unlawful activity* as defined in subsection (c)(7).[7]

■■■ Hill's "knowledge of a felony" argument *improperly conflates* elements (2), (3), and (4) above and misconstrues the plain language of subsections (a)(1) and (c)(1). As the *Maher* court observed, section 1956(a)(1) "requires proof that the laundered property 'in fact' involved the proceeds of 'specified unlawful activity'..., but it does not require proof that the defendant knew what that unlawful activity was. As to the defendant's knowledge, the government need only prove" that the defendant knew that the laundered property represented the proceeds of "some form of unlawful activity." *Maher*, 108 F.3d at 1526.

The *Maher* court further observed that subsection (c)(1) clarifies that the " 'knowing ... some form of unlawful activity' phrase" contained in subsection (a)(1) means "there must be proof that the defendant 'knew' that the property to be laundered came from 'some form, though not necessarily which form,' of criminal activity." *Id.* Accordingly, the government is not required to show the defendant knew "that the property involved in the transaction represents the proceeds of a specific type of unlawful activity." *Id.* Accord, *United States v. Carr*, 25 F.3d 1194, 1204 (3rd Cir.1994). Applying that same analysis here, we conclude that the government is not required to show that the defendant knew the precise nature of the unlawful activity; i.e., that he knew it was felonious as opposed to *misdemeanor activity*, as long as the government shows the defendant knew

---

7. Subsections 1956(a)(1)(A)(i), (B)(i), and (B)(ii) include an additional scienter element which is not at issue in this appeal; i.e., that the defendant either intended to promote a crime (subsection (A)(i)) or knew that the transaction was designed to conceal the proceeds of a crime (subsection (B)(i)) or was designed to avoid a transaction reporting requirement (subsection (B)(ii)).

the money was from some form of unlawful activity and further shows that the unlawful activity at issue was in fact a felony under state, federal or foreign law.

"This interpretation is supported by the section's legislative history." *Maher*, 108 F.3d at 1526. A congressional report analyzing the money laundering statute explains that the knowledge element discussed in subsections 1956(a)(1) and (c)(1) does not require that the defendant know exactly what crime generated the funds being laundered and further explains that the statute was designed to eliminate any such defense. *Id.* (citing S.Rep. No. 99–443 at 11–12 (1986)). Senate Report No. 99–443 provides that section 1956(a)(1):

> requires that the property involved in a transaction must in fact be the proceeds of "specified unlawful activity," and that the participant to the transaction must intend to facilitate "specified unlawful activity" or know that the transaction is designed to conceal the proceeds of "specified unlawful activity." However, in order to fall within the section, the participant need not know that the property involved in the transaction represents the proceeds of "specified unlawful activity." He or she need only know that it represents the proceeds of some form of unlawful activity. This distinction is drawn in order to prevent a defendant from escaping conviction by merely alleging that he or she though the property involved represented the proceeds of a crime not covered in the term "specified unlawful activity." It was reported to the Committee that such a defense has been successfully raised in other countries whose statutes do not draw the distinction in this section and it is the Committee's intention to avoid that result.

*Id.*

The Report points to the definition in subsection (c)(1) of the phrase "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" as used in section (a)(1), and clarifies that the phrase means "that the defendant need not know exactly what crime generated the funds involved in a transaction, only that the funds are the proceeds of

some kind of crime that is a felony under Federal or State law." S.Rep. No. 99–443 (1986) at 12. The Report further explains that this language was included so as to "eviscerate the defense that a defendant knew the funds came from a crime, but thought the crime involved was a crime not on the list of 'specified' crimes in section (c)(7)." *Id.* It is logical to conclude that this language was likewise intended to eviscerate the "but I thought the crime was only a misdemeanor" defense Hill urges us to acknowledge here. Rather, we conclude that Sections 1956(a)(1) and (c)(1) require the government to prove that (1) the defendant knew the laundered funds came from criminal activity; and (2) that the criminal activity at issue was designated a felony under federal, state, or foreign law.

We agree with the Second Circuit's observations that section 1956 focuses on the crime of money laundering and the attempt to launder dirty money; not the underlying criminal activity that produced the dirty money. "Why and how that money got dirty is defined in other statutes. .... The crime is the same: money laundering; the particular underlying activity specified by Congress is a necessary, but ancillary concern.... The precise nature of the unlawful source, so long as it is one that is among those listed in the statute, is an inconsequential detail that the defendant need not have known." *Maher*, 108 F.3d at 1527 (internal quotes and citations omitted).

The Senate Report confirms that the statute's "knowing" scienter requirements are far broader than Hill asserts. The Report instructs that the knowledge requirements are "to be construed, like existing 'knowing' scienter requirements, to include instances of 'wilful blindness.' *See United States v. Jewell*, 532 F.2d 697 (9th Cir.), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976)." S.Rep. No. 99–433 at 9. *See also Maher*, 108 F.3d at 1527 (where the court observed that Congress intended section 1956's reach to be broad).

Contrary to the position Hill advances here, the statute's knowledge requirements do not require the government to prove, or to allege in an indictment, that the defendant

knew that the source of the laundered proceeds was from criminal activity and to further prove that he also knew that the criminal activity at issue was designated as a felony, as opposed to a misdemeanor, under state, federal or foreign law. These arguments find no support in the plain language of the statute, its legislative history, or in appellate court decisions considering similar arguments.

The decisions Hill relies upon do not require a contrary result. Unlike the indictment in *United States v. Pupo*, 841 F.2d 1235 (4th Cir.), *cert. denied*, 488 U.S. 842, 109 S.Ct. 113, 102 L.Ed.2d 87 (1988), Hill's indictments properly alleged § 1956(a)(1)'s knowledge, or scienter, element. Unlike the indictment in *United States v. Hooker*, 841 F.2d 1225 (4th Cir.1988), Hill's indictments properly alleged § 1956(a)(1)'s elements; they did not merely cite the statute.

Hill's reliance on *United States v. Hayes*, 800 F.Supp. 1575 (S.D.Ohio 1992), *aff'd in part and vacated in part on other grounds*, 995 F.2d 1066 (6th Cir.1993), is likewise misplaced. The *Hayes* court observed that "to constitute money laundering in violation of 18 U.S.C. § 1956(a)(1)(A), the money in question must be proceeds of a felonious activity." Unlike Hill's prosecution here, in *Hayes*, the underlying criminal activity (copyright infringement) was in fact a misdemeanor; not a felony as required under subsections (a)(1) and (c)(1). The *Hayes* decision does not address section 1956(a)(1)'s scienter requirements and thus fails to advance Hill's knowledge-of-a-felony argument. To the extent it holds otherwise, this Court disagrees with the unpublished decision from the District Court for the Northern District of West Virginia, *United States v. Dobkin*, Cr. No. 91–00148–01/02 (March 17, 1993).

Accordingly, we affirm the district court's decision denying Hill's motion to dismiss the money laundering counts of his indictments for failing to properly allege the scienter element of the charged money laundering offenses. We similarly hold that the district court did not err when it instructed the jury as to the knowledge elements of money laundering under section 1956(a)(1).

**2. Jury Instructions**

Hill argues that the district court erred when it failed to instruct the jury that a money laundering conviction under section 1956(a)(1) requires the government to prove that the defendant not only knew that the proceeds being laundered were derived from criminal activity but must also prove that the defendant knew that the criminal activity creating those proceeds was a felony. We disagree. There is no knowledge-of-a-felony element under Section 1956(a)(1).

The district court properly instructed the jury as to the money laundering offenses. Our review of the district court's charge to the jury, when taken as a whole, reveals that it "fairly and adequately submit[ted] the issues and applicable law to the jury." *United States v. Buckley*, 934 F.2d 84, 87 (6th Cir. 1991) (quoting *United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir.1984)). The knowledge element discussed in subsections (a)(1) and (c)(1) requires proof that the defendant knew that criminal activity was the source of the laundered proceeds. There is no additional scienter requirement of proof that the defendant knew the precise nature of the criminal activity producing the dirty money; i.e., that it was a felony, as opposed to a misdemeanor. Rather, subsection (c)(1) requires that the government prove that the unlawful activity, which defendant knew was the source of the laundered money, did in fact constitute a felony under state, federal or foreign law.

We turn now to Hill's argument that the trial court improperly prevented him from presenting a defense on the knowledge-of-a-felony element.

**3. Evidentiary Issues**

■ Hill argues that the district court precluded him from presenting a defense when it ruled inadmissible Hill's proffered evidence, opining as to whether mere possession and placement of the video poker and slot machines without more was a *per se* violation of Tennessee law. Hill sought to introduce evidence that (1) he had discussions with a lobbyist and an official from a lobbying organization concerning whether

video poker and slot machines, such as those at issue here, were gambling devices *per se* under Tennessee law; (2) he was aware of the fact that two state circuit courts had issued opinions stating that the machines are not gambling devices *per se;* and (3) he was aware of the fact that a former director of the Tennessee Bureau of Investigation had testified before a state legislative subcommittee and had opined that the machines were not gambling devices *per se.* Hill contends that this proffered evidence was proof that he did not know that his conduct constituted a felony under Tennessee law and thus precluded him from presenting a defense to section 1956(a)(1)'s scienter element. Hill's argument is without merit.

▪ First, as explained above, section 1956(a)(1) does not have a knowledge-of-a-felony requirement. Second, the government's case and its evidence focused, not on mere possession and placement of the video slot and poker machines, but on the fact that Hill placed the machines in various places of business with the intent that they be used for gambling. Whether the machines were *per se* gambling devices was not an issue in Hill's case. Accordingly, the district court did not abuse its discretion when it found the proffered evidence irrelevant and thus inadmissible.[8]

▪ Furthermore, it is within the sole province of the court "to determine the applicable law and to instruct the jury as to that law", which in this case includes Tennessee's gambling laws. *See In re Air Crash Disaster,* 86 F.3d 498, 523 (6th Cir.1996). Hill's proffered evidence concerning the scope of Tennessee's gambling laws involves a question of law, not fact, and thus would have improperly invaded a matter solely within the court's province. As the district court properly observed, when determining whether Hill violated Tennessee's gambling statute, it "is irrelevant whether or not, [or] what somebody told the defendant concerning the legality or illegality of his operation, as long as he, he knowingly did what he did." Octo-

ber 16, 1996 Motion Hrg. Transcript, J.A. at 439. It is the court's task to instruct the jury on the law, and it is the jury's task to then consider evidence regarding Hill's conduct; i.e., placing video slot and poker machines in private businesses and sharing the profits they generated, and to determine whether Hill violated Tennessee law. We affirm the district court's evidentiary ruling.

**D. Lesser Included Offenses of Section 1956 Money Laundering**

▪ Hill raises yet another challenge to his money laundering offenses. He contends that the "dismissal of the structuring counts 54–70" at the close of the government's case "should have resulted in a dismissal of the money laundering counts as well" because the structuring offenses are lesser included offenses of the money laundering counts. We disagree. Hill's argument confuses the charges, misconstrues the district court's decision dismissing the § 1957 charges and the sole structuring offense, and misapplies *Ratzlaf v. United States,* 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) and *United States v. Holmes,* 44 F.3d 1150, 1154 (2d Cir.1995).

Hill is confused about the charges in Counts 54–70 which consist of money laundering charges; not structuring offenses. Counts 54–70 of the first indictment alleged that Hill violated 18 U.S.C. § 1957 by knowingly engaging in monetary transactions, affecting interstate commerce, and involving criminally derived property of a value greater than $10,000. The district court dismissed the § 1957 charges after determining that the evidence did not support a finding that more than $10,000 in the individual transactions at issue originated from illegal gambling proceeds rather than some legitimate source of income.

The $10,000 threshold is not an element of proof for the § 1956(a)(1)(B) money laundering charges. In addition, money laundering offenses under §§ 1956(a)(1)(B) and 1957 have different scienter requirements; § 1957

---

8. The district court's decision to exclude evidence is reviewed under an abuse of discretion standard. *General Electric Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997);

*United States v. Hart,* 70 F.3d 854, 858 (6th Cir.1995), *cert. denied,* 517 U.S. 1127, 116 S.Ct. 1368, 134 L.Ed.2d 534 (1996).

does not require that the defendant know that the transaction was designed to conceal or disguise the nature, location, source, ownership or control of the subject proceeds or designed to avoid a transaction reporting requirement under state or federal law. *See United States v. Allen,* 129 F.3d 1159, 1164–65 (10th Cir.1997). The statutes each require proof of an element the other does not. Accordingly, § 1957 offenses are not lesser-included offenses of § 1956. *See e.g., United States v. Allen,* 129 F.3d at 1164–65; *United States v. Caruso,* 948 F.Supp. 382, 390 (D.N.J.1996). The district court did not err when it dismissed the § 1957 charges but allowed the § 1956 charges to go forward.

 The sole structuring offense alleging a violation of 31 U.S.C. § 5324(a) was charged in count 6 of the second original indictment. The district court dismissed this structuring charge on the ground that the government had failed to prove that the defendant knew that structuring was a crime. J.A. at 440–441. *See Ratzlaf v. United States,* 510 U.S. 135, 138, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (holding that "to give effect to the statutory 'wilfulness' specification, the Government had to prove [the defendant] knew the structuring he undertook was unlawful.") The structuring and money laundering statutes at issue here have different knowledge requirements.[9] The structuring statute, unlike § 1956(a)(1)(B)(ii), does not speak to the attempt to cleanse dirty money, but rather to designing a transaction, in whole or in part, so as to avoid a transaction reporting requirement under state or federal law. Moreover, § 1956(a)(1)(B)(ii),

unlike the structuring statute, does not require that the defendant know that structuring or money laundering is a crime; and therefore the holding of the Court in *Ratzlaf* is inapplicable. *See United States v. Santos,* 20 F.3d 280, 283 n. 2 (7th Cir.1994). The structuring statute and § 1956(a)(1)(B)(ii) each require proof of an element the other does not. Accordingly, the district court did not err when it dismissed the structuring charge but allowed the § 1956(a)(1)(B)(ii) money laundering charges to go forward.[10]

Having affirmed Hill's convictions under 18 U.S.C. §§ 1955 and 1956, we turn now to his sentencing challenges. We first address his claim that the district court erred when it denied his request for a downward departure. We next address his claim that the court erred when it denied his request for a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.

### E. Sentencing

### 1. Downward Departure

 At sentencing, Hill argued that he was entitled to a downward departure from the guideline range primarily because his conduct was outside the "heartland" of cases usually covered by the money laundering guidelines. The district court apparently disagreed because the requested downward departure was not granted. There is no evidence that the district court was unaware of its discretion to depart from the guideline range or that the guideline range was improperly computed. We recently observed that the district court is not obligated to state that he knows he has the discretion to

---

**9.** "In order to prove structuring, the government ha[s] to show that (1) [the defendant] knew of the relevant reporting requirements, (2) he structured his transaction for the purpose of evading those reporting requirements, and (3) he acted with knowledge that [such] conduct was unlawful." *United States v. Gabel,* 85 F.3d 1217, 1223 (7th Cir.1996).

In order to prove money laundering under § 1956(a)(1)(B)(ii), the government must prove that "(1) the defendant willfully conducted or caused to be conducted a financial transaction; (2) the defendant knew at the time of the financial transaction that the money represented proceeds of some unlawful activity; (3) the money involved was in fact the proceeds of specified unlawful activity; and (4) the defendant knew at

the time that the transaction was designed in whole or in part to avoid a transaction reporting requirement". *United States v. Morales,* 108 F.3d 1213, 1221 (10th Cir.1997).

**10.** Hill's reliance on *United States v. Holmes,* 44 F.3d 1150 (2d Cir.1995) is misplaced. *Holmes* did not involve and does not address the 31 U.S.C. § 5324 structuring offense. Rather, it involved money laundering charges under both §§ 1956(a)(1)(B)(i) and (B)(ii) involving the same illegal act which the court held improperly multiplied the charges against the defendant. To correct the error, the case was remanded with instructions to vacate the conviction under (B)(ii) but not the conviction under (B)(i).

depart downward but is declining to do so. "Rather, it should be assumed, that the court, in the exercise of its discretion, found downward departure unwarranted." *United States v. Byrd,* 53 F.3d 144, 145 (6th Cir. 1995) (internal quotes and citations omitted). Under the facts presented here, "[t]his court has no jurisdiction to hear an appeal of a district court's discretionary refusal to depart downward". *United States v. Dellinger,* 986 F.2d 1042, 1044 (6th Cir.1993).

### 2. Acceptance of Responsibility Adjustment

■ Hill further challenges his sentence claiming that the district court erred when it denied him a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). Hill argues that he is entitled to the reduction because he fully acknowledged that he owned the video poker and slot machines and further argues that he should not be penalized for proceeding to trial so as to challenge the constitutionality of Tennessee's gambling law.

■ The burden is on the defendant "to show by a preponderance of the evidence that [he] had accepted responsibility for the crime committed." *United States v. Thomas,* 74 F.3d 701, 716 (6th Cir.), *cert. denied,* 519 U.S. 820, 117 S.Ct. 74, 136 L.Ed.2d 33 (1996). Although the guidelines permit a defendant to receive credit under § 3E1.1(a) even if he goes to trial, the reduction is "not intended for a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." Comment n. 2 to § 3E1.1. It is only in "rare" situations that a defendant may receive the adjustment after trial and a guilty verdict; e.g., "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt". *Id.*

The district court disagreed with Hill's contention that he had accepted responsibility for the charged offenses and observed that the record was "replete with denials" relating to Hill's factual guilt. The court further

observed that, even at sentencing, Hill refused to admit his guilt and did not appear remorseful. June 20, 1997 Sentencing Transcript, J.A. at 516. We are convinced that the district court did not err when it declined to give Hill a two-level reduction, pursuant to U.S.S.G. § 3E1.1(a); we thus affirm Hill's sentence.[11]

The record refutes Hill's argument that he accepted the factual basis of the charged offenses. Likewise, his argument that he was merely raising constitutional issues is not borne out by the record. The government presented evidence that Hill operated an illegal gambling business, knew that his video poker and slot machines were used for gambling, shared in the profits, and laundered the proceeds of his illegal gambling business. Hill, on the other hand, contended that he was a legitimate businessman, not someone who shared in illegal gambling profits or who laundered dirty gambling money.

Having affirmed Hill's sentence, we now turn to his forfeiture challenges.

### F. Hill's Forfeiture Challenges

Hill was charged with criminal forfeiture under 18 U.S.C. § 982 and 21 U.S.C. § 853, and after a separate October 22, 1996 trial, the jury returned a special verdict finding that each property that was the object of a money laundering count on which Hill was convicted was "involved in" the charged offense and subject to forfeiture. Hill raises two challenges regarding the criminal forfeiture of his property. We first address Hill's specific challenge as to the forfeiture of 616 shares of Greene County Bancshares stock. We then address Hill's broader challenge that the criminal forfeiture of his property in toto violates the Excessive Fines Clause of the Eighth Amendment.

### 1. Stock Share Purchase

■ Hill contends that his 616 shares of Greene County Bancshares stock were improperly forfeited. He claims there was insufficient evidence connecting his stock pur-

---

11. "The sentencing court's finding regarding acceptance of responsibility is entitled to great deference and is reversed only if found to be clearly erroneous." *United States v. Thomas,* 74 F.3d 701, 716 (6th Cir.), *cert. denied,* 519 U.S. 820, 117 S.Ct. 74, 136 L.Ed.2d 33 (1996).

chase to money gained from his illegal gambling business because the stock was purchased with "clean" funds from his line of credit. The core premise of Hill's argument is that drawing on a line of credit, which is basically a loan, cannot constitute a money laundering transaction and thus cannot support a criminal forfeiture, such as that of the stock at issue here, under 18 U.S.C. § 982. Hill's argument lacks merit both factually and legally.

There is ample evidence connecting the funds Hill deposited into his American Fidelity Bank line of credit to his illegal gambling business as well as evidence connecting the funds deposited to his purchase of the 616 shares of Greene County Bancshares stock.[12] Hill obtained the line of credit in 1988. A computer printout of the history of the account revealed that Hill used it extensively between 1988 and 1992, that he made substantial, repeated cash payments to reduce its outstanding balance, and that sometimes the payments would, in addition to cash, include checks from the two business proprietors that paid Hill by check for his share of the profits generated by his gambling machines located on their premises.

Hill used his American Fidelity Bank line of credit like most people use a checking account. He regularly applied gambling proceeds as payments on the line of credit, and immediately thereafter purchased cashier's checks using money drawn from the line of credit. It is undisputed that, on June 27, 1991, Hill deposited $60,000 in cash to be applied to his American Fidelity line of credit, thus increasing the outstanding balance available to him for draws. Immediately after making the payment, Hill purchased a $63,140 cashier's check which he then used to purchase the stock at issue here.

 Hill's legal argument; i.e., that use of a line of credit, which is basically a loan, can never constitute a money laundering transaction, is likewise without merit. The plain meaning of "transaction" as defined in

§ 1956(c)(3) proves otherwise. Section 1956(c)(3) defines "transaction" to include "with respect to a financial transaction ... a deposit, withdrawal, transfer between accounts, exchange of currency, *loan, extension of credit, ... or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected.*" (Emphasis added). This broad definition of "transaction" includes Hill's use of his line of credit to launder money gained from illegal activity.

### 2. Excessive Fines

 Hill's final challenge is that the district court erred when it concluded that the forfeiture ordered in this case did not violate the Excessive Fines Clause of the Eighth Amendment. The district court found that Hill had profited greatly from his criminal activity deriving income of about $3.5 million over a five year period. Hill was fined $25,000 in addition to the criminal forfeiture of approximately $1 million worth of property, thus incurring a financial penalty of slightly over $1 million. Other than the argument rejected above as to the Bancshares stock, Hill does not raise specific challenges as to the nexus between the money laundering offenses and the forfeited property. Rather, he concentrates his argument on the claim that the forfeiture is so grossly disproportionate to his crime that it violates the Eighth Amendment. We agree with the district court. There is no Eighth Amendment violation.

The money laundering statute provides for a fine "of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater...." 18 U.S.C. § 1956. Here, a fine of $2 million would not be excessive under the money laundering statute. This Court has rejected arguments similar to Hill's and has held that there is no constitutional violation when the forfeiture does not exceed the maximum fine allowed

---

12. We will not reverse a conviction for insufficient evidence "if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt."

*United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir.1992) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

by statute. *See United States v. Elder,* 90 F.3d 1110, 1132–33 (6th Cir.1996).

## G. Government's Forfeiture Challenges

We turn now to the government's appeal concerning the criminal forfeiture of Hill's property. The government raises two challenges. The first questions the district court's authority, under 18 U.S.C. § 982, to permit Hill to substitute cash in lieu of the property subject to forfeiture. The second asserts that the district court abused its discretion when it stayed the execution of that portion of the criminal forfeiture judgment relating to residential real property owned by *bona fide* purchasers for value pending this appeal.

### 1. Substitution of Cash for Property Subject to Forfeiture

■ The criminal forfeiture judgment in this case is predicated upon 18 U.S.C. § 982(a)(1) and 21 U.S.C. § 853, as made applicable by 18 U.S.C. § 982(b)(1)(A). After returning a guilty verdict on money laundering charges, the jury, in a bifurcated proceeding, also returned a special criminal forfeiture verdict, finding that certain of Hill's real and personal property was involved in the money laundering offenses. The government then moved for a preliminary order of forfeiture. In a July 7, 1997 post-verdict forfeiture order, the district court gave Hill the option of satisfying the forfeiture order by depositing $500,000 into the registry of the court within 30 days instead of forfeiting the property subject to forfeiture. The approximate value of the forfeited properties is $1 million. The court also entered an order on August 21, 1997 permitting Hill to post letters of credit totalling $400,000 and a $100,000 cash bond toward satisfaction of the $500,000 forfeiture, and stayed execution of the forfeiture pending this appeal. The government argues that forfeiture of Hill's property found by the jury to be involved in the money laundering offenses is mandatory pursuant to 18 U.S.C. § 982, and the district court was

without authority to permit Hill to substitute $500,000 in cash in lieu of forfeiture of the actual property subject to forfeiture. We agree.[13] The statutes at issue here require forfeiture of the actual property subject to forfeiture unless the district court finds substitution is appropriate under 21 U.S.C. § 853(p). The district court made no such finding under § 853(p), and the reasons it provided in support of its substitution are not included under that subsection.

Forfeiture of properties involved in money laundering is mandatory pursuant to 18 U.S.C. § 982(a)(1) and 21 U.S.C. § 853(a). Section 982(a)(1) provides, in relevant part, that "[t]he court, in imposing sentence on a person convicted of an offense in violation of ... section 1956 ... of this title, *shall* order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." (Emphasis added). Similarly, 21 U.S.C. § 853(a) provides that "[t]he court, in imposing sentence ..., shall order, in addition to any other sentence imposed pursuant to this subchapter ..., that the person forfeit to the United States all property described in this subsection." 21 U.S.C. § 853(p), the "substitute asset provision", is "incorporated into the money laundering forfeiture scheme via 18 U.S.C. § 982(b)(1)", *United States v. Voigt,* 89 F.3d 1050, 1084 (3rd Cir.1996), and provides that "substitute property" may be forfeited if, "as a result of any act or omission of the defendant", the property (1) cannot be located despite due diligence; (2) has been transferred, sold to, or deposited with a third party; (3) has been placed beyond the court's jurisdiction; "(4) has been substantially diminished in value; or (5) has been commingled with other property which cannot be divided without difficulty." 21 U.S.C. § 853(p) (West 1998).

The district court quoted the mandatory language of 18 U.S.C. § 982(a)(1) and 21 U.S.C. § 853(a), indicating that the government was entitled to forfeiture of those properties the jury found were involved in Hill's money laundering offenses. July 7, 1997

---

**13.** The standard of review of a district court's interpretation of federal forfeiture law is *de novo. See United States v. $46,588.00 in U.S. Currency*

*and $20.00 in Canadian Currency,* 103 F.3d 902 (9th Cir.1996).

Mem. Op. at 1–2. J.A. at 260–61. Then, citing no authority, the court granted Hill the option of substituting cash for the property which the jury found to be forfeitable, "because it will take substantial time, effort and expense to convert certain of said property into cash money...." July 7, 1997 Order, J.A. at 265–66; July 7, 1997 Mem. Op. at 6, J.A. at 264. We are convinced that the district court erred in its application of controlling law in this regard. The district court ignored the mandatory language of 18 U.S.C. § 982 and permitted a substitution of cash for forfeited property absent findings that substitution was proper under 21 U.S.C. § 853(p). The district court's order permitting the substitution of $500,000 in cash in lieu of forfeited property is reversed.

We turn now to the government's challenge regarding the district court's stay of execution of the criminal forfeiture judgment. The government challenges only that portion of the stay that relates to residential real property currently owned by *bona fide* purchasers for value.

### 2. Stay of Execution As to Residential Real Property

 At Hill's request, the district court stayed the execution of the forfeiture order pending appeal. The government objected to the stay and argues that it placed an unnecessary cloud on the title to the subject property and impeded proceedings to clear the title as provided under 21 U.S.C. § 853(n) and to seek substitute assets under § 853(p). The government contends that the district court abused its discretion in staying the execution of the forfeiture order only as to certain subdivision lots that were developed and sold by Hill to *bona fide* purchasers for value prior to entry of the criminal forfeiture order. We agree.

Rule 38(e) of the Federal Rules of Criminal Procedure provides that, if an appeal of a conviction or sentence is taken, the district court may stay the execution of a criminal forfeiture judgment. The decision to stay is discretionary. We are convinced that he district court abused its discretion when it stayed the execution of the forfeiture order involving residential real property currently owned by homeowners who were *bona fide* purchasers for value. It is undisputed that the purchasers were innocent victims of Hill's criminal activity, that Hill had sold the property to them, and that he no longer had an interest in the property. The court's entry of a stay stalled proceedings under § 853(n) that could have cleared title to the subject property and thus placed an unnecessary burden on the *bona fide* purchasers of this forfeited real property. We, therefore, reverse the district court's stay decision as it relates to the subject real property.

### III.

For the foregoing reasons, we **AFFIRM** Hill's convictions, sentence and criminal forfeiture. We **REVERSE** the district court's post-verdict forfeiture decision allowing Hill to substitute $500,000 in cash in lieu of the forfeited property, and we **REVERSE** the district court's decision staying the execution pending appeal of that portion of the criminal forfeiture judgment as it relates to residential real property owned by *bona fide* purchasers for value.