**UNITED STATES of America,
Plaintiff–Appellant,**

*v.*

**SUPERIOR GROWERS SUPPLY, INCORPORATED; Jeffrey A. Gibson; Christopher D. Schneider; Derick Hall, Defendants–Appellees.**

No. 92–1087.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 4, 1992.

Decided Dec. 11, 1992.

---

John C. Bruha (argued and briefed), Office of the U.S. Atty., Grand Rapids, MI, for plaintiff-appellant.

James S. Brady (argued and briefed), Grand Rapids, MI, for Superior Growers Supply, Inc., Jeffrey A. Gibson.

Larry C. Willey, Grand Rapids, MI, for Christopher D. Schneider.

J. Terrance Dillon, Dykema, Gossett, Spencer, Goodnow & Trigg, Grand Rapids, MI, for Derick Hall.

Before: NELSON, NORRIS, and SUHRHEINRICH, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

This case presents the novel question of whether an indictment charging defendants, a garden supply store, its owners and an employee, with "conspiracy to aid and abet the manufacture of marijuana"

states a crime where it does not allege that the alleged aiding and abetting actually furthered the manufacture of marijuana. The district court dismissed the indictment for failing to allege an illegal agreement. Like the district court, we believe that an essential element of the crime charged in the indictment is defendants' knowledge that their customers were manufacturing marijuana or intended to manufacture marijuana. We therefore AFFIRM.

## I.

Defendants Superior Growers Supply Inc.; its two shareholders, Jeffrey Gibson and Christopher Schneider; and employee, Derick Hall; were charged on December 11, 1990 in a one-count indictment with conspiracy to aid and abet the manufacture of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 2. The charging portion of the indictment provides:

### COUNT I

#### (Conspiracy to Aid and Abet the Manufacture of Marijuana)

From in or about August of 1983 to in or about October of 1989, in the Western District of Michigan, Southern Division, and elsewhere,

#### SUPERIOR GROWERS SUPPLY, INC., JEFFREY A. GIBSON, CHRISTOPHER D. SCHNEIDER, and DERICK HALL,

defendants herein, did knowingly, willfully and unlawfully combine, conspire, and confederate and agree together, and with each other, and with other persons known and unknown to the grand jury, to aid and abet the manufacture of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, section 841(a)(1) and Title 18, United States Code, section 2.

### MEANS AND METHODS

It was part of the conspiracy that the defendants would manufacture, sell and distribute equipment and supplies used for the illegal manufacture and cultivation of marijuana.

It was further part of the conspiracy that defendants would advertise their products in "High Times" magazine and other marijuana-related publications.

It was further part of the conspiracy that the defendants would sell or give publications concerning the growing of marijuana and other marijuana-related publications to many of their customers.

It was further part of the conspiracy that the defendants would, on occasion, provide information and advice on the growing of marijuana to various customers.

It was further part of the conspiracy that, on occasion, defendants Jeffrey A. Gibson and Christopher D. Schneider would accept marijuana or hashish in partial payment for equipment and supplies *sold by Superior Growers Supply, Inc.*

The indictment also averred 89 overt acts allegedly committed in furtherance of the conspiracy. The overt acts alleged can be grouped into four categories: the sale of hydroponic[1], or indoor gardening equipment, the purchase of various publications on growing marijuana, the sale of these publications to various customers, and the giving of advice and information on growing marijuana to customers.

Defendants pled not guilty, and filed a motion to dismiss the indictment. The district court granted the motion, holding:

> ... a conspiracy to aid and abet is unlawful only if the acts defendants conspired to commit are unlawful. Acts alleged to constitute aiding and abetting are unlawful only if they actually induce or procure an underlying crime.
>
> . . . .
>
> There is no allegation in the indictment here of any underlying crime. Therefore

---

**1.** Hydroponic equipment allows a gardener to control growing conditions by utilizing artificial lighting instead of sunlight, and mediums other than soil with the aid of special fertilizers.

I'm satisfied the acts alleged to constitute the aiding and abetting were not unlawful, and the conspiracy to commit the acts was not unlawful. Since there was no underlying crime here, the indictment fails to allege an unlawful act and will therefore be dismissed.

On appeal, the government argues that the district court confused the elements of aiding and abetting with the elements of conspiracy to aid and abet. The government states that while it is necessary to show actual commission of the underlying offense in order to convict a defendant of an aiding and abetting offense; it is not necessary to show commission of the underlying offense when conspiracy is charged.

## II.

The Notice Clause of the Sixth Amendment, as protected by Fed.R.Crim.P. 7(c)[2], guarantees a criminal defendant the right to be informed of the charges brought against him.[3] *Russell v. United States*, 369 U.S. 749, 761, 82 S.Ct. 1038, 1045, 8 L.Ed.2d 240 (1962). In general, an indictment is constitutionally adequate "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *Russell*, 369 U.S. at 763–64, 82 S.Ct. at 1046–47;

*United States v. Sturman*, 951 F.2d 1466 (6th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2964, 119 L.Ed.2d 586 (1992); *United States v. Paulino*, 935 F.2d 739, 749 (6th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 315, 116 L.Ed.2d 257 (1991).[4]

An indictment will usually be sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense. *Hamling*, 418 U.S. at 117, 94 S.Ct. at 2907; *Paulino*, 935 F.2d at 750. The Supreme Court has cautioned, however: "Undoubtedly the language of the statute may be used in the general description of the offense, but it must be accompanied with such a statement of the facts and circumstances as will *inform the accused of the specific offense, coming under the general description with which he is charged.*" *Hamling*, 418 U.S. at 117–18, 94 S.Ct. at 2907–08 (citation omitted). When the indictment charges a conspiracy:

[I]t is well settled that an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy.

*United States v. Reynolds*, 762 F.2d 489, 494 (6th Cir.1985) (quoting *Wong Tai v. United States*, 273 U.S. 77, 81, 47 S.Ct. 300, 301, 71 L.Ed. 545 (1927)).

In reviewing an indictment this court "must ask whether the omission complained of deprives the defendant of one of

---

**2.** Fed.R.Crim.P. 7(c) states in pertinent part that the indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offenses charged."

**3.** Furthermore, the Indictment Clause of the Fifth Amendment ensures that a defendant is charged with only those crimes brought before the grand jury.

**4.** As noted by Professors LaFave and Israel, the *Hamling* standard includes three requirements: "(1) inclusion of the elements of the offense; (2) providing adequate notice as to the charge; and (3) providing protection against double jeopardy." 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 19.2, at 445 (1984). Of the three criteria, the second—that the pleading

"fairly inform" the defendant of the charges against him, "restates what most knew as the primary function of the pleading. It is a function that the Supreme Court has described as constitutionally mandated by the defendant's Sixth Amendment right 'to be informed of the nature and cause of the accusation.'" *Id.* at 446 (citation omitted).

A corollary purpose of the requirement that an indictment set out the specific offense is described as the "judicial review" function. *Id.* at 448 & n. 69. "That function has been described by the Supreme Court as 'inform[ing] the [trial] court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had.'" *Id.* (quoting *United States v. Cruikshank*, 92 U.S. 542, 23 L.Ed. 588 (1876)).

the protections which the guaranty of a grand jury indictment was meant to ensure." *Sturman*, 951 F.2d at 1479 (citing *Russell*, 369 U.S. 749, 763, 82 S.Ct. 1038, 1046, 8 L.Ed.2d 240 (1962)). To be legally sufficient, the indictment must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime. *Fleisher v. United States*, 302 U.S. 218, 58 S.Ct. 148, 82 L.Ed. 208 (1937) (per curiam); *see also United States v. Polychron*, 841 F.2d 833 (8th Cir.), *cert. denied*, 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988). Whether an indictment adequately alleges the elements of the offense is a question of law subject to de novo review. *United States v. Chaney*, 964 F.2d 437, 446 (5th Cir.1992). A bill of particulars cannot cure a legal deficiency; rather the proper result is dismissal of the indictment. *See Sturman*, 951 F.2d at 1479.

### III.

We now turn to the issue at hand—the constituents of the crime of "conspiracy to aid and abet the manufacture of marijuana." In arguing that it need not charge and prove the underlying section 841(a)(1) crime to bring the instant charge, the government argues:

> Here, the indictment alleged an agreement to aid and abet the manufacture of marijuana. It is illegal to manufacture marijuana, 21 U.S.C. § 841(a)(1); it is illegal to aid and abet the manufacture of marijuana, 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Thus, the indictment alleged an unlawful object of the conspiracy; *i.e.* aiding and abetting the manufacture of marijuana.

Government's brief at 7–8. The district court rejected this reasoning, stating:

> I'm satisfied that the flaw in the argument is that it skips a vital step. The acts that constitute the aiding and abet-

ting are not illegal unless they actually do further the manufacture of marijuana. Thus, a conspiracy to commit these acts is not illegal unless the acts would further the actual, ongoing manufacture of marijuana.

We agree with the government that the operative charge here is conspiracy and that the essence of conspiracy is an agreement to commit an illegal act, not its accomplishment. *See United States v. Fruehauf Corp.*, 577 F.2d 1038, 1071 (6th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978) (citations omitted). In other words, the conspiracy itself is a complete offense. *United States v. Dempsey*, 733 F.2d 392, 396 (6th Cir.), *cert. denied*, 469 U.S. 983, 105 S.Ct. 389, 83 L.Ed.2d 323 (1984). "To obtain a conviction under section 846 [21 U.S.C. § 846],[5] the government must prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join and participated in the conspiracy." *United States v. Blakeney*, 942 F.2d 1001, 1009 (6th Cir.1991) (citations omitted). It is also true, that in this circuit, it is not necessary to charge or prove the commission of an overt act in a § 846 conspiracy. *Id.; United States v. Nelson*, 922 F.2d 311, 317–18 (6th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1635, 113 L.Ed.2d 731 (1991).

The illegal act to which defendants have allegedly conspired, the "unlawful object of the conspiracy," is "aiding and abetting the manufacture of marijuana." The aiding and abetting statute under which defendants are charged, provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal.

18 U.S.C. § 2(a). The section does not create a separate crime, but rather abolishes the common law distinction between the

---

**5.** 21 U.S.C. § 846 provides:
> Any person who attempts or conspires to commit an offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 841(a)(1) states in relevant part:
> (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

principals and accessories. *United States v. Perry*, 643 F.2d 38, 45 (2d Cir.1981). To be guilty of aiding and abetting a defendant must "in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek by his action to make it succeed." *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938) (Hand, J.); *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949) (adopting Judge Hand's conception of aiding and abetting); *See also United States v. Hughes*, 891 F.2d 597, 599 (6th Cir.1989) (en banc). However, "[b]efore a conviction for aiding and abetting can be upheld, it is essential that the jury find that all essential elements of the underlying crime were committed by someone." *United States v. Horton*, 847 F.2d 313, 322 (6th Cir.1988) (citations omitted).

█ The problem here is how to logically combine the crime of conspiracy, which does not require proof of the underlying substantive offense, with an aiding and abetting offense, which doesn't exist without one. If the charge were merely "conspiracy to manufacture marijuana," the government would have to prove only an agreement between defendants and their customers to manufacture marijuana. Had defendants been charged with "aiding and abetting the manufacture of marijuana," the government would not have to prove any agreement between defendants and their customers, but would have to prove that defendants knew their customers were manufacturing marijuana or intended to, and intended to assist in the unlawful act. It seems to us then that in order to conspire or agree to assist "X" in the manufacture of marijuana, "Y and Z" have to know that "X" is manufacturing marijuana or planning to. Otherwise, all "Y and Z" are agreeing to do is to aid and abet a "possibility," or a "criminal wish"; which simply isn't a crime.

█ It is for this reason that we find the government's reasoning specious. Absent an awareness that their customers are manufacturing marijuana, defendants cannot have the requisite criminal intent to conspire to aid and abet them. Without the underlying crime, there can be no knowledge or intent to further it. The necessary and inescapable conclusion then is that the occurrence of the underlying crime has to be an essential element of such a charge because otherwise the requisite knowledge and intent to further the substantive offense cannot exist. By deconstructing the charge in the indictment, the seeming paradox of a conspiracy charge which requires proof of the commission of the underlying crime is harmonized. We therefore find that the indictment in this case fails the "essential elements" requirement of *Hamling;* and is not saved by *Wong Tai*, since the actual manufacture of marijuana is an essential element of the "conspiracy to aid and abet the manufacture of marijuana," not merely a component of the underlying substantive offense.

The means and methods section does nothing to cure the defect. This portion alleges that defendants agreed to manufacture and sell equipment and supplies "used for" the illegal manufacture of marijuana; agreed to advertise the products in marijuana publications; occasionally provided information and advice on how to grow marijuana to various customers; and accepted marijuana or hashish in partial payment for equipment and supplies. Yet, as the government concedes, each of these acts barring the last one, is legal act. The indictment does not in any way characterize the equipment as "designed for or used as" or "being used for" the manufacture of marijuana. Further, it is not alleged that the advertisements targeted marijuana cultivators or even that the products were touted as marijuana cultivating equipment. While the allegation that providing information to customers comes somewhat closer to the mark, it ultimately falls short because it does not state that the publications or information were given with defendants' knowledge that a particular customer was planning to grow marijuana, and with defendants' intent to assist that customer in the endeavor. Lastly, the allegation of accepting marijuana as payment for equipment and supplies in no way links it

up with defendants' unlawful behavior as alleged.

In sum, there is no allegation in either the charging portion or the means and methods section of the indictment to tie defendants' otherwise legal activities to an unlawful offense. Therefore, the "fair notice" aspect of the first *Hamling* requirement is also not satisfied, since the essential facts set out in the means and methods section do not describe a crime. *Cf. United States v. Orozco–Prada*, 732 F.2d 1076 (2d Cir.) (indictment charged a crime where it stated a conspiracy to aid and abet the distributions of controlled substances by means of a money laundering organization), *cert. denied*, 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984).

The only way to make the indictment stick is to supply an inference that customers who purchase hydroponic equipment, and customers who buy marijuana-related publications, and customers who seek advice on the growing of marijuana, (who we must assume are distinct groups since the indictment does not allege otherwise); have the specific intent to grow marijuana. To supply that inference, however, would be to ignore the Supreme Court's admonition in *Direct Sales Co. v. United States*, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943), that "[c]harges of conspiracy are not to be made out by piling inference upon inference, thus fashioning what ... [is] called a dragnet to draw in all substantive crimes." *Id.* at 711, 63 S.Ct. at 1269.

We believe the result reached here is reinforced by a comparison with two Supreme Court cases. *United States v. Falcone*, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940); and *Direct Sales*, 319 U.S. 703, 63 S.Ct. 1265. In *Falcone*, the Supreme Court affirmed the judgment reversing the convictions of sugar and yeast suppliers who knowingly sold the products to illegal distillers. The defendants had been charged with conspiring to violate the revenue laws by operation of illicit stills. In affirming, the Court stated:

> Those having no knowledge of the conspiracy are not conspirators, and one who without more furnishes supplies to an illicit distiller is not guilty of conspiracy even though his sale may have furthered the object of a conspiracy to which the distiller was a part but of which the supplier had no knowledge.

*Id.* 311 U.S. at 211, 61 S.Ct. at 207. By contrast, in *Direct Sales*, the Supreme Court affirmed the conviction of a drug manufacturer and wholesaler who had, over a period of years, supplied large amounts of morphine sulfate to a doctor who was illegally distributing the drug. The Court distinguished *Falcone:*

> The commodities sold [in *Falcone* ] were articles of free commerce, sugar, cans, etc. They were not restricted as to sale by order form, registration, or other requirements. When they left the seller's stock and passed to the purchaser's hands, they were not in themselves restricted commodities, incapable of further legal use except by compliance with rigid regulations, such as apply to morphine sulfate. The difference is like that between toy pistols or hunting-rifles and machine guns. All articles of commerce may be put to illegal ends. But all do not have inherently the same susceptibility to harmful and illegal use. Nor, by the same token, do all embody the same capacity, from their very nature, for giving the seller notice the buyer will use them unlawfully. Gangsters, not hunters or small boys, comprise the normal private market for machine guns. So drug addicts furnish the normal outlet for morphine which gets outside the restricted channels of legitimate trade.

*Id.* 319 U.S. at 710, 63 S.Ct. at 1269. This difference was critical to both the seller's knowledge of the intended illegal use of the goods and to the seller's intent to "further, promote and cooperate in" the illegal use. *Id.* at 711, 63 S.Ct. at 1269. Also critical in *Direct Sales* was the continuity between the seller and the buyer. *Id.* at 706, 63 S.Ct. at 1267.

■ As *Falcone* and *Direct Sales* make clear, knowledge of the underlying crime and intent to further it are essential elements of a conspiracy to aid and abet a substantive crime. Furthermore, like the

commodities sold in *Falcone,* the articles alleged for the means and method section of the indictment are articles of free commerce. Unlike the articles in *Direct Sales,* they do not individually have "inherently the same susceptibility to harmful and illegal use," and therefore do not by their nature put the seller on notice as to illegal use. Nor was any close relationship between defendants and a particular customer or customers alleged.

The government cites several cases which it claims establish the sufficiency of the indictment. Each of the cases, however, is in a different procedural posture than the instant one, presenting challenges to the sufficiency of the evidence supporting a conspiracy to aid and abet conviction, not attacks on the legal sufficiency of the indictment. Thus, all these cases do is convince us that such a charge is legally and factually viable *when an underlying crime has been committed. See United States v. Betancourt,* 838 F.2d 168 (6th Cir.1986) (defendant's conviction for conspiracy to aid and abet others in distributing cocaine supported by the evidence where defendant met with government informant and gave him large quantities of money to launder, which had a scent of cocaine), *cert. denied,* 486 U.S. 1013, 108 S.Ct. 1748, 100 L.Ed.2d 210 (1988); *United States v. Bosch,* 914 F.2d 1239 (9th Cir. 1990) (legal impossibility not a defense to charge of conspiracy to aid and abet distribution of cocaine because conspiracy complete when defendant agree to commit the offense and defendants overtly acted in its furtherance); *United States v. Perry,* 643 F.2d 38, 44 (2d Cir.) (defendants who agreed to distribute diluents with intent that they be used as cutting agents for heroin and which were distributed by one or more heroin networks could be convicted under 21 U.S.C. § 846 of conspiracy to violate 21 U.S.C. § 841 by aiding and abetting the distribution of heroin), *cert. denied,* 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981).

For all the foregoing reasons, the judgment of the district court dismissing the indictment is AFFIRMED.

DAVID A. NELSON, Circuit Judge, dissenting.

The indictment charges that the defendants "did knowingly, willfully and unlawfully ... conspire ... to aid and abet the manufacture of marijuana...." If the defendants had been charged simply with conspiracy to manufacture marijuana, without any reference to aiding and abetting, it is indisputable, I believe, that the defendants could have been convicted on proof that they conspired to aid and abet the manufacture of marijuana. See *United States v. Perry,* 643 F.2d 38, 53 (2d Cir.) (Van Graafeiland, J., concurring), *cert. denied,* 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981):

> "[O]ne who is charged with conspiracy to commit an unlawful act may be convicted if he conspired to aid and abet the commission of the act. *Pereira v. United States,* 347 U.S. 1, 11–12, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954); *United States v. Valencia,* 492 F.2d 1071 (9th Cir.1974); *United States v. Lester,* 363 F.2d 68, 72–73 (6th Cir.1966), *cert. denied,* 385 U.S. 1002, 87 S.Ct. 705, 17 L.Ed.2d 542 (1967)." [1]

Under 18 U.S.C. § 2, aiding and abetting is not a separate crime. If the defendants had conspired to manufacture marijuana as principals, therefore, they would have been committing exactly the same crime as if they conspired to aid and abet others in manufacturing marijuana. And I know of no requirement that the government state in the indictment whether the defendants envisioned that the underlying crime would be committed by themselves or by others.

In disclosing that the government would try to prove that the defendants conspired to commit the underlying crime as aiders and abettors and not as principals, the indictment was thus telling the defendants more than the law required. I confess myself at a loss to understand how making

1. "[T]he knowing supply of a raw material necessary for the commission of a crime by another constitutes aiding and abetting that crime." *Perry,* 643 F.2d at 44.

the indictment more informative than necessary somehow made it legally insufficient.

I can see no more problem with linking the crime of conspiracy to an offense that is to be committed by the conspirator as an aider and abettor than with linking the conspiracy crime to an offense that is to be committed by the conspirator as a principal. In the eyes of the law, the offenses are the same. The panel majority concedes, as it must, that the common law distinction between principals and aiders-and-abettors has been abolished—but the majority then proceeds to "deconstruct" the indictment in order to solve a problem that could not possibly exist unless the common law distinction had been retained.

It is true that, under the plain language of 18 U.S.C. § 2, one cannot be convicted of committing a crime as an aider and abettor when no crime has actually been committed at all. See *United States v. Horton,* 847 F.2d 313 (6th Cir.1988). It is not true, however, that one cannot be convicted of conspiracy to commit an underlying crime unless the underlying crime has actually been committed. If one knowingly and willfully conspires with another to murder a federal judge by shooting him, for example, the crime of conspiracy has been committed whether or not the judge is ever actually shot. And if one knowingly and willfully conspires with another to murder a judge by selling a gun to a person known to be bent on shooting the judge, that too is a crime—from the perspective of this judge, at least—whether or not the object of the conspiracy is ever achieved.

Knowledge on the part of the defendants is of critical importance, of course. The defendants in the case at bar could not be found guilty of conspiracy, under the theory on which the government has elected to proceed, absent proof of knowledge that customers to whom the defendants unlawfully conspired to sell marijuana-manufacturing equipment actually intended to use the equipment to manufacture marijuana.

I have no reason to doubt that the government would have tried to make such a showing had the indictment not been dismissed short of trial. In describing its evidence to the district court, the government represented that its proofs would show that specific customers of the defendants used equipment and information obtained from the defendants to grow marijuana. We are not entitled to assume, at this stage of the proceeding, that the government lacked sufficient evidence to prove that the defendants knew what these customers intended to do. It is well established that a defendant may not challenge an indictment on the ground that it is not supported by sufficient evidence. *United States v. Levin,* 973 F.2d 463, 471 (6th Cir.1992) (citing Sixth Circuit and Supreme Court precedent) (Martin, J., dissenting).

I would reverse the dismissal of the indictment and remand the case for trial.