NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0261n.06
Case No. 23-5691

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 13, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE WESTERN DISTRICT OF |
| MONIQUE STEWART, | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
|  | ) | OPINION |

Before: COLE, GRIFFIN, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Monique Stewart was suspected of participating in an alleged kickback scheme of sorts. According to the government, Stewart approved fraudulent payments to a nurse providing medical services to Stewart's daughter, and those payments were partially redirected to Stewart. For those acts, Stewart was charged with health care fraud and conspiracy to commit the same. A jury convicted Stewart of the substantive offense. On appeal, she raises several issues, including challenges to the indictment, jury instructions, and denials of her motions for a new trial and acquittal. Seeing no merit in Stewart's arguments, we affirm.

I.

A licensed practical nurse, Wanda Goolsby worked as an in-home pediatric care contractor for a number of health care agencies. One of those contractors was Elk Valley. Elk Valley required Goolsby to fill out time sheets documenting her hours and the services she provided to patients.

The patient (or the patient's caregiver) would then sign the time sheets to verify that the services were rendered. Elk Valley, in turn, submitted that information to TennCare, Tennessee's Medicaid agency, which paid Elk Valley for these services.

One of Goolsby's in-home pediatric patients was Monique Stewart's daughter. Stewart signed documents verifying the work Goolsby purportedly performed for Stewart's daughter. Based on that documentation, Elk Valley billed TennCare for those services. An investigation later revealed that Goolsby was double-billing, disclosing that some of Goolsby's Elk Valley time sheets recorded hours that overlapped with time she spent working for another health care provider. During this same period, Goolsby made Cash App payments to Stewart, purportedly in return for Stewart providing childcare for Goolsby's children.

A grand jury returned an indictment charging Stewart, Goolsby, and others with various health care fraud crimes. Count one, conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, alleged a conspiracy through which Goolsby submitted time sheets documenting services for Stewart's daughter that were not actually provided, and then made periodic payments to Stewart in return for her not reporting the misrepresentations. Count four, a substantive health care fraud charge, was based largely on the same asserted conduct. It alleged that Goolsby and Stewart, "being aided and abetted each by the other," willfully executed a scheme to defraud a health care benefit program in violation of 18 U.S.C. §§ 2 and 1347. After Goolsby and the other co-defendants pleaded guilty, Stewart proceeded to trial alone.

Before trial, the parties jointly submitted jury instructions to the district court. No party objected to the instructions ultimately read to the jury. At the close of evidence, the district court denied Stewart's renewed motion for a judgment of acquittal. Following deliberations, the jury convicted Stewart of the substantive health care fraud charge (count four), but acquitted her of

conspiracy to commit health care fraud (count one). The district court denied Stewart's motion for a new trial, and she was sentenced to time served followed by one year of supervised release.

## II.

On appeal, Stewart alleges several errors: defects in the indictment, the district court's abuse of discretion in denying her motion for a new trial, and insufficiency of the evidence. We address those issues in turn.

A. Begin with her challenge that the indictment inadequately alleged the crime of conviction. We review the sufficiency of an indictment through a de novo lens. *United States v. Howard*, 947 F.3d 936, 942 (6th Cir. 2020).

The Federal Rules of Criminal Procedure instruct that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). We read this standard to mean that Stewart's indictment had to "set out all of the elements of the charged offense," and give her "notice . . . of the charges" she faced. *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (cleaned up). Typically, it is enough that the indictment recite the words of the statute, provided the statute unambiguously states all the elements of the offense. *Id.* (citing *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992)). By meeting these markers, the indictment allowed Stewart "to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *Id.*

The indictment against Stewart for health care fraud in violation of 18 U.S.C. § 1347 satisfies Rule 7(c)(1). Under the statute, Stewart committed health care fraud if she "knowingly and willfully execute[d] . . . a scheme . . . to defraud any health care benefit program" or "to obtain, by means of false or fraudulent pretenses, representations, or promises," money from such a

program "in connection with the delivery of or payment for health care benefits, items, or services." 18 U.S.C. § 1347; *see also United States v. Bertram*, 900 F.3d 743, 748 (6th Cir. 2018).

Count four alleged that Stewart and Goolsby, "being aided and abetted each by the other, willfully executed . . . [a] scheme . . . to defraud . . . and to obtain, by means of materially false and fraudulent pretenses, representations, and promises[,] money" from "a health care benefit program" "in connection with the delivery of and payment for health care benefits, items, and services." The language in count four recited the statutory language almost verbatim, and it also incorporated by reference paragraph six of the indictment. *See* Fed. R. Crim. P. 7(c)(1) (permitting incorporation by reference in one count of allegations made in another). There, the indictment described Stewart's receipt of payments from Goolsby that were allegedly in return for Stewart's approval of the fraudulent timesheets. It therefore adequately stated the facts underlying the alleged offense. To our eye, the indictment sufficiently alleged Stewart committed health care fraud.

Seeing things differently, Stewart emphasizes the indictment's allegation that defendants were "aided and abetted each by the other." She reads that phrase as notifying her of possible culpability only under an aiding and abetting theory, but not as a principal. She intimates, however, that the jury may have convicted her as a principal, given that the jury was instructed on both accessory and principal theories of liability. According to Stewart, the indictment was therefore insufficient.

We disagree with Stewart's contention that the indictment supported a conviction only under an aiding and abetting theory. By closely following the language of the health care fraud statute, the indictment charged principal liability. The language stating that defendants were "aided and abetted each by the other" merely charged Stewart in the alternative under a theory of

4

aider and abettor liability. *See United States v. VanderZwaag*, 467 F. App'x 402, 407 (6th Cir. 2012) (explaining that the government may charge a violation of a statute under both principal liability and liability for aiding and abetting); *United States v. Dean*, 969 F.2d 187, 195 (6th Cir. 1992) (same).

Even if the aiding and abetting language somehow converted the charge into one for accessory liability only, our cases make clear that it would still be permissible for the jury to convict Stewart as a principal. To understand why, begin with the statutory backdrop. At common law, parties to a felony were classified as (1) principals in the first degree who actually committed the crime, (2) principals in the second degree who were present during the offense and aided or encouraged its commission, (3) accessories before the fact who were not present during the crime but otherwise aided and abetted its commission, and (4) accessories after the fact who assisted after the crime's completion. *See* 2 Wayne R. LaFave, *Substantive Criminal Law* § 13.1 (3d ed. 2023). In enacting the "aiding and abetting" statute, 18 U.S.C. § 2, Congress abolished the distinction between principals and accessories for purposes of criminal offenses. *Superior Growers Supply*, 982 F.2d at 177–78; *see also United States v. Abu-Taqa*, 100 F. App'x 462, 465 (6th Cir. 2004) (per curiam). The statute clarifies that "[w]hoever . . . aids, abets, counsels, commands, induces or procures" the commission of a crime against the United States "is punishable as a principal." 18 U.S.C. § 2(a); *see Superior Growers Supply*, 982 F.2d at 177–78; *United States v. Maselli*, 534 F.2d 1197, 1200 (6th Cir. 1976) ("An aider and abettor is punishable" as a principal under § 2(a).). We understand this development to mean that aiding and abetting is "not a distinct substantive crime," but instead a theory of liability "embodied in every federal indictment, whether specifically charged or not." *United States v. McGee*, 529 F.3d 691, 695 (6th Cir. 2008) (citation omitted). An indictment, therefore, may charge a defendant only as a principal,

yet support a conviction under a theory of aiding and abetting. *Id*. at 695–96; *see also United States v. Lester*, 363 F.2d 68, 72 (6th Cir. 1966) (explaining that "an indictment need not specifically charge 'aiding and abetting'" to support a jury verdict on that theory).

The opposite is also true. Generally speaking, reference to a theory of aiding and abetting does not preclude a finding of liability as a principal. Instead, we read an indictment against the backdrop of 18 U.S.C. § 2, which, as we have recognized, ties together principal and aiding and abetting liability. *See Lester*, 363 F.2d at 72. Consider *United States v. Mullins*, 22 F.3d 1365 (6th Cir. 1994). There, an indictment charged Mullins with aiding and abetting in the obstruction of justice. *Id*. at 1368. Following his conviction of the offense as a principal, Mullins argued that the indictment was insufficient to sustain his conviction. *Id*. We upheld his conviction. As we explained, "the government may always prove the defendant is guilty as a principal, even where the indictment charges only that he acted as an accessory." *Id*.; *see also Abu-Taqa*, 100 F. App'x at 465 ("[T]he indictment need not identify with particularity who among a number of defendants acted as a principal and who acted as accessories."); *United States v. MacLloyd*, 526 F. App'x 434, 440 (6th Cir. 2013) (finding sufficient evidence to sustain a conviction under both accessory and principal theories of liability even though the indictment charged defendant as an aider and abettor).

Stewart pushes back, reading *Mullins* to apply only to cases where it is difficult to determine which co-defendant was the principal and which the accessory. *See Mullins*, 22 F.3d at 1368. And here, Stewart says, the government harbored no doubt that she was the accessory. But this was not the "rationale" for our holding in *Mullins* that an indictment charging only accessorial liability can support a conviction as a principal offender, as Stewart suggests. As we have repeatedly recognized, "[t]here is no distinction between aiding and abetting the commission of a

6

crime and committing the principal offense." *United States v. Richardson*, 948 F.3d 733, 741 (6th Cir. 2020). An aider and abettor is accordingly subject to the same punishment as a principal. *Id.* at 742. At day's end, nothing indicates that the indictment itself was defective.

Stewart's reply brief takes a different tack. There, she contends that the government waived (or is judicially estopped from) charging principal liability by stating in its opening and closing arguments that it was pursuing only a theory of aiding and abetting. By failing to mention this basis for reversal in her opening brief, however, Stewart forfeited the argument. *See United States v. Allen*, 93 F.4th 350, 358 (6th Cir. 2024). So we decline to consider it now.

B. Stewart makes two related arguments. First, she argues that the district court improperly instructed the jury that she could be held liable as a principal, despite the indictment's alleged failure to articulate this theory. Second, she argues that the alleged discrepancy between the indictment and the jury instructions resulted in either a constructive amendment to, or a prejudicial variance from, the indictment. On this latter issue, a constructive amendment occurs when "the presentation of evidence and jury instructions" differ from the elements of the offense charged in the indictment to such an extent that there is a "substantial likelihood that the defendant may have been convicted of an offense other than" that in the indictment. *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007) (citation omitted). A variance, on the other hand, occurs when "the evidence at trial proves facts materially different from those alleged in the indictment." *Id.* (citation omitted). Stewart maintains that a constructive amendment or variance took place because the trial evidence and jury instructions departed from the indicted charge of aiding and abetting, allowing the jury to convict Stewart of health care fraud as a principal.

Multiple problems undermine these arguments. One, Stewart did not raise them before the district court, meaning we review her claims for plain error. *See United States v. Kuehne*, 547 F.3d

7

667, 682 (6th Cir. 2008). Two, as explained above, the indictment adequately alleged both principal and accessory liability, and the district court fairly instructed the jury on principal liability. As a result, there was no error, plain or otherwise, in the instructions.

C. Stewart also challenges the denial of her motion for a new trial. In the district court, she moved for a new trial under Federal Rule of Criminal Procedure 33 on the grounds that the verdict was against the manifest weight of the evidence. According to Stewart, it was "factually impossible" for the jury to find that the evidence supported a conviction for aiding and abetting health care fraud while finding that she was not guilty of conspiring to commit health care fraud during the same period.

Stewart's claim, however, faces a roadblock from the start. Normally, we review the denial of a Rule 33 motion for a new trial for an abuse of discretion. *United States v. Matthews*, 31 F.4th 436, 449 (6th Cir. 2022). But here, the basis for a new trial is the inconsistency of the jury's verdict. And that particular issue generally is not reviewable. *United States v. Randolph*, 794 F.3d 602, 610 (6th Cir. 2015); *United States v. Lawrence*, 555 F.3d 254, 262 (6th Cir. 2009); *see also United States v. Powell*, 469 U.S. 68–69 (1984) (insulating jury verdicts from review on the ground of inconsistency). This is largely because when a jury inconsistently convicts a defendant of one offense and acquits her of another, it is uncertain whether the jury erred in the conviction or the acquittal. *See Lawrence*, 555 F.3d at 261–62. Equally true, an acquittal can fairly be inspired by compassion or compromise, in addition to more traditional considerations of guilt. *Id*. at 262.

To overcome this general prohibition, Stewart urges us to apply one of what she contends are two seeming exceptions. The first encompasses instances where a jury verdict is "marked by such inconsistency as to indicate arbitrariness or irrationality." *Lawrence*, 555 F.3d at 263. Even if we interpreted this exception as broadly as Stewart, *see Randolph*, 794 F.3d at 610, it was not

8

wholly arbitrary or irrational for the jury to have convicted Stewart of aiding and abetting, but not conspiracy. Turn to the elements of those offenses. As the district court instructed the jury, to demonstrate conspiracy, the government had to prove that "two or more persons conspired, or agreed, to commit the crime of health care fraud," and that Stewart "knowingly and voluntarily joined the conspiracy." An essential component of a conspiracy, then, is proof of an agreement, something the jury could have concluded was lacking. *See Superior Growers Supply*, 982 F.2d at 178. But the substantive health care fraud offense does not contain that requirement. For that offense, the government had to prove that Stewart "helped to commit the crime or encouraged someone else to commit the crime," and that she "intended to help commit or encourage the crime." In other words, when a defendant acts with the mere intent to assist another in an unlawful act, not a full-fledged agreement, it is enough to commit the substantive offense. *Id.* (explaining that, while a conspiracy charge requires proof of an agreement, a charge of aiding and abetting instead requires the intention to assist in an unlawful act). And it is neither arbitrary nor irrational to view Stewart as having assisted Goolsby in her health care fraud scheme, even if a knowing agreement was absent.

More settled is the practice of challenging a verdict as inconsistent where a finding of guilt on one count "necessarily excludes a finding of guilt on another." *Randolph*, 794 F.3d at 610–11 (citation omitted). That said, for many of the reasons just explained, a guilty verdict on Stewart's substantive offense is compatible with a not-guilty verdict on the conspiracy count. So we decline to review Stewart's challenge to the verdicts.

D. Stewart next challenges the denial of her motion for acquittal under Federal Rule of Criminal Procedure 29 based on insufficiency of the evidence. As Stewart preserved the issue for appeal by moving at the end of the prosecution's case-in-chief and again at the close of evidence,

9

de novo review of the Rule 29 motion applies. *Budd*, 496 F.3d at 530. We thus view the evidence in the light most favorable to the prosecution and ask whether any reasonable juror could have found that the government proved the elements of the crime beyond a reasonable doubt. *Id.*

To convict Stewart of health care fraud as a principal, the government had to show that she (1) "created a scheme" to defraud a health care benefit program, (2) "implemented the plan," and (3) "acted with intent to defraud." *Bertram*, 900 F.3d at 748 (cleaned up). Aiding and abetting, on the other hand, requires a finding that Stewart "contributed to the execution of the scheme with the intent to defraud." *United States v. Hunt*, 521 F.3d 636, 645 (6th Cir. 2008). Circumstantial evidence of fraudulent intent is sufficient. *United States v. Anderson*, 67 F.4th 755, 770 (6th Cir. 2023) (per curiam).

Ample evidence supported Stewart's conviction under either theory of liability. The gist of the case against Stewart was that she colluded with Goolsby to effectively double-bill different health care agencies with whom Goolsby contracted, and Goolsby would then share her ill-gotten gains with Stewart. The jury heard testimony that Goolsby submitted timesheets for work performed for Elk Valley for the same time periods that she also sought payment from another health care agency. For Stewart's part, she testified that she signed Goolsby's Elk Valley timesheets. Stewart likewise explained that, during this sequence of purported double-billing by Goolsby, she received Cash App payments from Goolsby. A reasonable juror, therefore, could have inferred from this evidence that Stewart devised and executed a plan to approve fraudulent timesheets in return for a kickback. And the jury was not required to accept Stewart's alternative explanation for these payments. The evidence also supported the conclusion that Stewart contributed to the execution of a scheme with an intent to defraud. In either case, the evidence supported her conviction of health care fraud. *See Hunt*, 521 F.3d at 645 ("[R]egardless of whether

10

[the defendant] was actually the person who devised the fraudulent scheme, he is still guilty of health care fraud because the evidence is sufficient to support a finding that he contributed to the execution of the scheme with the intent to defraud."). Accordingly, Stewart's sufficiency of the evidence challenge fails.

E. Finally, Stewart argues that we should vacate her conviction and remand the case for a new trial in light of the cumulative errors she says plague her conviction. *See United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004) ("[T]o obtain a new trial based upon cumulative error, a defendant must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair."). But we have not identified any errors, so none would accumulate to warrant such a remedy. Stewart is not entitled to a new trial.

\* \* \* \* \*

We affirm the judgment of the district court.

11